**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MICHAEL THOMPSON; THOMPSON
PROPERTIES, LLC; UNITED BUILDERS, LLC;          Case No. 2024 -_____
HARBOR COVE RV RESORT, LLC; SOUTH
WILLOWBROOK ASSOCIATES, LLC; GULF              Hon. _____
SHORES, LLC; SOUTH WILLOWBROOK
SOUTH, LLC; THOMPSON CONSTRUCTION
CO., LLC; FIRST CHOICE REAL ESTATE
ASSOCIATES, LLC; and LTP, LLC,

          Plaintiffs,

v.

ROSE THORNTON, MICHELLE SIGNOR,
NICHOLAS THORNTON, and ROBERT SIGNOR

          Defendants.
_____/

**COMPLAINT AND JURY DEMAND**

Plaintiffs Michael Thompson; Thompson Properties, LLC; United Builders, LLC; Harbor Cove RV Resort, LLC; South Willowbrook Associates, LLC; Gulf Shores, LLC; South Willowbrook South, LLC; Thompson Construction Co., LLC and LTP, LLC, for their complaint against defendants Rose Thornton, Michelle Signor, Nicholas Thornton, and Robert Signor state:

**OVERVIEW OF THE CASE**

1.  Plaintiffs hired defendants Rose Thornton and Michelle Signor to work as a real estate salesperson and accountant, respectively, for several of the plaintiff entities. This was a position of trust in which Rose Thornton and Michelle Signor had access to plaintiffs' bank accounts, lines of credit, credit cards, and financial information. Rose Thornton and Michelle Signor abused this trust by stealing millions of dollars from plaintiffs.

Rose Thornton and Michelle Signor covered up their theft by exceeding the authorization they had to switch plaintiffs online bank passwords, switch plaintiffs' accounts to online access only (which they controlled) and intercepting the mail and phone calls that may have otherwise roused plaintiffs' suspicions to the theft. Defendants spent the money they stole, using it to gamble (hundreds of thousands of dollars were withdrawn from ATMs at Firekeepers Casino) and live lifestyles beyond their means. Nicholas Thornton and Robert Signor were part of the conspiracy as well, taking full advantage of the money their respective spouses stole by accepting the benefits of the money, depositing the money into joint bank accounts, and accepting and cashing checks written to them with stolen funds. This complaint seeks redress for the theft.

### PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Michael Thompson ("Mr. Thompson") is an individual citizen of Michigan.

3. Plaintiff Thompson Properties, LLC ("Thompson Properties") is a Michigan limited liability company. The only member of Thompson Properties is Mr. Thompson.

4. Plaintiff United Builders, LLC ("United Builders") is a Michigan limited liability company. The only member of United Builders is Mr. Thompson.

5. Plaintiff Harbor Cove RV Resort, LLC ("Harbor Cove") is a Michigan limited liability company. The only member of Harbor Cove is Mr. Thompson.

6. Plaintiff South Willowbrook Associates, LLC ("South Willowbrook") is a Michigan limited liability company. The only member of South Willowbrook is Mr. Thompson.

7. Plaintiff Gulf Shores, LLC ("Gulf Shores") is a Michigan limited liability company. The only member of Gulf Shores is Mr. Thompson.

8.     Plaintiff South Willowbrook South, LLC ("SWS") is a Michigan limited liability company. The only member of SWS is Mr. Thompson.

9.     Plaintiff Thompson Construction Co., LLC ("Thompson Construction") is a Michigan limited liability company. The only member of Thompson Construction is Mr. Thompson.

10.    Plaintiff First Choice Real Estate Associates, LLC ("First Choice") is a Michigan limited liability company. The only member of First Choice is Mr. Thompson.

11.    Plaintiff LTP, LLC ("LTP") is a Michigan limited liability company. The only members of LTP are Mr. Thompson and non-party Ron Lanford. (Collectively, Mr. Thompson, Thompson Properties, United Builders, Harbor Cove, South Willowbrook, Gulf Shores, SWS, Thompson Construction, First Choice, and LTP are "Plaintiffs"; collectively, all of the Plaintiffs, except Mr. Thompson, are the "Thompson Entities").

12.    Defendant Rose Thornton is an individual citizen of Michigan.

13.    Defendant Michelle Signor is an individual citizen of Michigan.

14.    Defendant Nicholas Thornton is an individual citizen of Michigan.

15.    Defendant Robert Signor is an individual citizen of Michigan. (Collectively, Rose Thornton, Michelle Signor, Nicholas Thornton, and Robert Signor are "Defendants").

16.    This Court has jurisdiction over this action under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

17.    Defendants reside in Branch County, Michigan. A substantial part of the events or omissions described in this complaint occurred in Branch County, Michigan.

18.    This Court is a proper venue for this action consistent with 28 U.S.C. § 1391(b).

**GENERAL ALLEGATIONS**

19.   Plaintiffs incorporate all other allegations by reference.

20.   In March 2020, Mr. Thompson hired Rose Thornton to work as a real estate salesperson for First Choice.

21.   Soon after Mr. Thompson hired Rose Thornton, she ingratiated herself with Mr. Thompson and quickly gained his trust and confidence.

22.   In July 2020, Mr. Thompson agreed to loan Rose Thornton $277,834.76. The loan was memorialized in a promissory note which is attached to this Complaint as Exhibit 1.

23.   The money was supposed to be re-paid by September 30, 2020 and if it was repaid by that date, there would be no interest on the loan.

24.   Rose Thornton never repaid the loan, which remains due and payable according to its terms, with interest accruing at 8% per year. The loan also requires Rose Thornton to pay attorney fees and costs in any action to collect on this debt.

25.   At approximately this same time (July 2020) Rose Thornton had also persuaded Mr. Thompson to give her access to credit cards held in the name of Mr. Thompson and/or the Thompson Entities.

26.   Mr. Thompson informed Rose Thornton that her access to his and/or the Thompson Entities' credit cards was limited to making purchases for the benefit of Plaintiffs.

27.   In approximately late-2021 Rose Thornton convinced Mr. Thompson to hire Michelle Signor as an accountant for the Thompson Entities.

28.   In her position with the Thompson Entities, Ms. Signor had access to all of the checks, online banking information, credit cards, bank records, and business records for those entities and was responsible for preparing the books and records for those entities.

4

29. In her position as an accountant for the Thompson Entities, Michelle Signor knew that Rose Thornton was withdrawing money from the Thompson Entities and that there was no legitimate business purpose for those withdrawals.

30. In fact, Michelle Signor also actively participated in the unauthorized withdrawal of money from the Thompson Entities accounts in all the same ways that Rose Thornton did, after Michelle Signor began working as an accountant for the Thompson Entities.

31. After the Thompson Entities hired Michelle Signor she was also actively involved with Rose Thornton in stealing money from Plaintiffs' bank accounts, lines of credit, and credit cards.

32. Rose Thornton and/or Michelle Signor abused the trust Mr. Thompson placed in them and, in violation of Mr. Thompson's orders, on numerous occasions between July 2020 and April 2023, they used the credit cards:

    a. To purchase goods and services for themselves, their family (including, but not limited to the other Defendants), and their friends;

    b. To make cash withdrawals, including numerous cash withdrawals at Firekeepers Casino, for their own personal benefit and for the benefit of their family and friends (including, but not limited to, the other Defendants); and

    c. For other unlawful and unauthorized purposes that may be determined during the course of this action.

33. None of this credit card use was for the benefit of Plaintiffs.

34. Rose Thornton and/or Michelle Signor concealed their personal use of Plaintiffs' credit cards by:

a. Intercepting paper statements regarding credit card use that were mailed to Plaintiffs before they reached Mr. Thompson;

b. Using Plaintiffs' computers to access the internet and Plaintiffs' online credit card accounts to change the credit card statements to paperless statements delivered to an e-mail address that they controlled that was not available to Mr. Thompson; and

c. Other acts that may be identified during the course of this action.

35. Between June 2020 and April 2023, Rose Thornton and/or Michelle Signor, on numerous occasions, used the Plaintiffs' credit cards to make purchases for their own personal use – without authorization - and then used other money from bank accounts in Plaintiffs' name to "pay" for those purchases.

36. Mr. Thompson was unaware of Rose Thornton and/or Michelle Signor's use of Plaintiffs' money to pay for personal purchases for Rose Thornton and/or Michelle Signor's personal benefit until April 2023.

37. Unaware of Rose Thornton's ongoing abuse of Plaintiffs' credit cards, in approximately late-2020 or early 2021, Mr. Thompson added to Rose Thornton's duties by placing her in charge of the internal bookkeeping for Mr. Thompson's companies, including the Thompson Entities.

38. Within the first year of working for First Choice, Rose Thornton had run off several of Mr. Thompson's long-time employees at the Thompson Entities, including his long-time office manager, Deb Wise, and his long-time bookkeeper, Kelly Smith.

39. No later than May 2021, Rose Thornton had access to all of the banking records and information for Plaintiffs, including all the banking records and information for all of

the Thompson Entities and for Mr. Thompson personally. When Michelle Signor was hired in late-2021 to work for the Thompson Entities, she immediately had access to all of the banking records and information for Plaintiffs, including all the banking records and information for all of the Thompson Entities and for Mr. Thompson personally.

40. While Plaintiffs granted Rose Thornton and Michelle Signor access to Plaintiffs' computers to perform their ordinary job functions (i.e., making data and accounting entries to account for the financial affairs of the Thompson Entities) at no time did Plaintiffs ever grant Rose Thornton or Michelle Signor the authority to use Plaintiffs' computers to access Plaintiffs' online credit card or banking accounts over the internet or to alter any of Plaintiffs' banking or credit card information or preferences or to engage in any online banking or credit card transactions.

41. On numerous occasions between January 2021 and April 2023, Rose Thornton and/or Michelle Signor abused the trust Mr. Thompson placed in them and, in violation of Mr. Thompson's orders, used the Plaintiffs' bank accounts to withdrawal money belonging to Plaintiffs for their own personal use.

42. Rose Thornton and/or Michelle Signor withdrew money from Plaintiffs' bank accounts by:

    a.    Writing checks to themselves, their family, friends, acquaintances, (including but not limited to the Defendants), or to their creditors from Plaintiffs' bank accounts and using a signature stamp to sign the check using Mr. Thompson's signature;

b.      Writing checks to themselves, their family, friends, acquaintances, (including but not limited to the Defendants), or to their creditors from Plaintiffs' bank accounts and forging Mr. Thompson's signature;

c.      Making electronic withdrawals of money and/or online payments using a computer to access the internet to make and direct the transfers;

d.      Forging Mr. Thompson's signature for cash withdrawals from banks and credit unions (i.e., counter transactions) at which Plaintiffs had accounts;

e.      Transferring money through online apps, such as Zelle, for their own personal benefit;

f.      Directing tenants of properties owned by Thompson Properties (including, but not limited to, Ken Scott and Olivia Moeller) to send rent payments via Zelle to a Zelle account Rose Thornton and/or Michelle Signor set up in the name of Thompson Properties; Rose Thornton and/or Michelle Signor then transferred the money via Zelle payment from the Thompson Properties Zelle account to themselves;

g.      Rose Thornton made payments from Thompson Properties' checking account to Jim Nisely, who was Michelle Signor and Robert Signor's landlord, for Michelle Signor and Robert Signor's rent payments. Neither Mr. Thompson nor Thompson Properties knew of or authorized this expenditure. This expenditure was for the personal benefit of Michelle Signor and Robert Signor and not Mr. Thompson or Thompson Properties; and

h.      Other means that may be identified during this action.

43. Rose Thornton and/or Michelle Signor concealed their personal use of Plaintiffs' bank accounts by:

   a.   Intercepting paper bank account statements mailed to Plaintiffs before they reached Mr. Thompson;

   b.   Intercepting phone calls from financial institutions intended to alert Mr. Thompson to unusual activities in Plaintiffs' accounts;

   c.   Using the internet to change the bank statements to paperless statements delivered to an e-mail address that they controlled that was not available to Mr. Thompson;

   d.   Failing to record the transactions in the books and records of the respective companies; and/or

   e.   Other acts that may be identified in the course of this action.

44. Between June 2020 and April 2023, Rose Thornton and/or Michelle Signor, on numerous occasions, used the Plaintiffs' lines of credit to make advances against those lines for their own personal use – without authorization from Plaintiffs.

45. Rose Thornton and/or Michelle Signor made advances on the lines of credit by:

   a.   Making transfers from the line of credit to other checking and/or savings accounts in Plaintiffs' name over the internet;

   b.   then withdrawing that money from those checking and/or savings accounts to use for their own personal benefit and not the Plaintiffs' benefit by:

      i.   writing checks to themselves from the checking accounts and signing them using Mr. Thompson's signature stamp or forging Mr. Thompson's signature;

9

ii.     withdrawing cash from the account(s) via counter withdrawals using Mr. Thompson's signature stamp or forging Mr. Thompson's signature;

iii.     making online transfers from the checking/savings accounts to credit card companies to pay for credit card purchases they made without authority from Plaintiffs; where the credit card purchases were solely for the benefit if Rose Thornton and/or Michelle Signor and not for Plaintiffs' benefit;

iv.     writing checks to their family, friends, acquaintances, (including, but not limited to, the Defendants), their creditors, and/or others whose identity may be determined during the course of this action, using Mr. Thompson's signature stamp or forging Mr. Thompson's signature;

v.     writing checks and/or making online bill payments to their personal creditors for their own personal benefit and not for the benefit of Plaintiffs, by using Mr. Thompson's signature stamp or forging Mr. Thompson's signature or, in the case of online bill payments, directing those payments without Plaintiffs knowledge or consent; and/or

vi.     other means that may be identified during the course of discovery in this action.

46.     Plaintiffs did not authorize any of the line of credit transactions described above.

47.   Rose Thornton and/or Michelle Signor concealed their personal use of Plaintiffs' lines of credit by:

    a.   Intercepting paper account statements mailed to Plaintiffs before they reached Mr. Thompson;

    b.   Intercepting phone calls from financial institutions intended to alert Mr. Thompson to unusual activities in Plaintiffs' lines of credit;

    c.   Using Plaintiffs' computer to access the internet to access Plaintiffs' online accounts at banks at which Plaintiffs had lines of credit to change the statements to paperless statements delivered to an e-mail address that they controlled that was not available to Mr. Thompson; and/or

    d.   Other means that may be identified in the course of this action.

48.   Michelle Signor and Rose Thornton agreed to convert and/or embezzle Plaintiffs money to their own use without Plaintiffs' authorization.

49.   Rose Thornton and Michelle Signor agreed to cover-up their conversion and/or embezzlement by working in concert to prevent Mr. Thompson from accessing the financial records of the Plaintiffs. This cover-up was accomplished by:

    a.   Intercepting communications from banks and credit unions intended for Mr. Thompson;

    b.   Switching accounts from paper statement to paperless statements;

    c.   Denying Mr. Thompson online access to Plaintiffs' accounts;

    d.   Not accurately recording bank activity (i.e., deposits and withdrawals) in the books and records of the Thompson Entities;

e.     Making false statements to Mr. Thompson when he would ask about the financial condition of the Thompson Entities or any unusual withdrawals or expenses incurred by the Thompson Entities, specifically by telling him that there was no unusual activity and the Thompson Entities were in sound financial condition; and

f.     Other means that may be identified during the course of this action.

50.   Rose Thornton and Michelle Signor agreed with Nicholas Thornton and Robert Signor to convert or embezzle Plaintiffs' money and keep it for themselves.

51.   In furtherance of this agreement, Defendants:

a.     Wrote checks to Nicholas Thornton and/or Robert Signor that were unauthorized by any of the Plaintiffs and were a means of converting the Plaintiffs' money for Defendants own use;

b.     Deposited money taken form Plaintiffs' bank accounts without Plaintiffs' permission into joint bank accounts owned by Rose Thornton and Nicholas Thornton; and/or Michelle Signor and Robert Signor for the purpose of converting Plaintiffs' money;

c.     Made purchases of goods and services on Plaintiffs' credit cards without Plaintiffs' authorization where the goods purchased were for the joint benefit of Rose Thornton and Nicholas Thornton and/or Michelle Signor and Robert Signor;

d.     Made cash withdrawals at casinos for their own personal benefit and not for the benefit of Plaintiffs;

e.   Used $48,000 of Plaintiffs' cash to pay Jeff Hall for a truck, the title of which was transferred to Nicholas Thornton;

f.   Made payments from Thompson Properties' checking account to Jim Nisely, who was Michelle Signor and Robert Signor's landlord, for Michelle Signor and Robert Signor's rent payments.

g.   Took other actions that may be identified in the course of this action.

52.   In 2022, Mr. Thompson and Rose Thornton agreed that if Rose Thornton paid Mr. Thompson $385,000 in cash, Mr. Thompson would purchase a house in his name on Coldwater Lake; then he would make and pay for improvements to the house, and then he would sell the house. Mr. Thompson would keep the cash from the sale and would discharge any debt that Rose Thornton owed to him (including the $277,834.76 loan described in the Promissory Note).

53.   Rose Thornton told Mr. Thompson that she had the money to pay the $385,000 in a 401(k) account. In fact, Rose Thornton transferred $385,000 to Mr. Thompson telling him this was her money that she was paying as part of their agreement. Consequently, Mr. Thompson used the $385,000 to purchase the home, consistent with the agreement.

54.   But the $385,000 Ms. Thornton paid to Mr. Thompson was not her money, but was, in fact, money she had transferred to herself from Mr. Thompson's other accounts and lines of credit and other Thompson Entities' accounts and lines of credit. Mr. Thompson would never have purchased the house if he had known Rose Thornton had stolen or embezzled the $385,000 from him and was in fact using his own money and not hers.

13

55.     Rose Thornton used Plaintiffs' money, without Mr. Thompson's knowledge or consent, to purchase residential real property in Hillsdale County, in which Rose Thornton's sister lived. Rose Thornton then forged Mr. Thompson's signature to a land contract for that property that allowed Ms. Thornton's sister to reside at the property and pay below-market installment payments at the property.

56.     In 2022, Rose Thornton promised an individual named Mohammed that if he paid her $15,000 she would buy him a house.

57.     Rose Thornton took the $15,000, bought a house (101 Clay St. in Coldwater, Michigan) but never obtained a deed, title insurance or any other formal documentation of the transaction.

58.     Rose Thornton bought the 101 Clay St. property for $125,000 using Plaintiffs' money without Mr. Thompson's consent.

59.     Rose Thornton then sold the 101 Clay St. Property – not to Mohammed, from whom she had taken the $15,000 – but to Ebrhim -Mohammed-Abdulha-AL-Hadhrami on a land contract.

60.     Rose Thornton, without Mr. Thompson's knowledge or consent, signed the land contract by using Mr. Thompson's signature stamp and naming Thompson Properties as the vendor on the land contract.

61.     The land contract has extremely favorable (not fair market) terms in favor of the vendee (i.e., monthly payments of $700.00 per month – so low that they do not allow for full payment of the value of the house, let alone taxes, insurance, or interest).

62.     Mr. Thompson never would have entered into this transaction on behalf of Thompson Properties if he had known the true circumstances of the transaction.

63. Because Defendants covered-up all of their actions, Plaintiffs did not learn about Defendants' actions until April 2023.

64. At that time, in April 2023, Plaintiff terminated Rose Thornton and Michelle Signor.

65. When Plaintiffs terminated Rose Thornton and Michelle Signor, Rose Thornton and Michelle Signor destroyed or deleted or attempted to destroy or delete all of the books and records, financial records, bank statements, journals, credit card statements, electronic files and virtually any business record they could get their hands on (both physical and electronic records).

66. After Plaintiffs learned about Rose Thornton's and Michelle Signor's conversion and embezzlement, Mr. Thompson reported the matter to the Michigan State Police and asked them to investigate.

67. In approximately June 2023, when Rose Thornton was aware of the Michigan State Police investigation, she contacted Mr. Thompson and told him that she would return the money that she and Michelle Signor stole from Plaintiffs.

68. Rose Thornton told Mr. Thompson that she would return the money if, and only if, Mr. Thompson stopped the police investigation, stopped cooperating with the police and stopped providing any further information to the police.

69. Mr. Thompson, believing this threat was the only way to get his money back, agreed and asked the Michigan State Police to stop the investigation.

70. Rose Thornton told Mr. Thompson the money was in a bank in Croatia. Mr. Thompson began to make arrangements to recover the money in Croatia and return it to the United States.

71. Then, Rose Thornton told Mr. Thompson that she would return the money from overseas and pay him, in cash, in Arizona. Mr. Thompson made arrangements to go to Arizona to get the return of his money.

72. Then Rose Thornton told Mr. Thompson that she would deliver his money to him in Roatan, Honduras. Ms. Thornton told him she would meet him in Roatan and return the money to him there. Ms. Thornton requested that Mr. Thompson pay her $4,000 to purchase a plane ticket to Roatan and she assured him she would return the money to him there on July 28, 2023.

73. Mr. Thompson bought himself a plane ticket to Roatan and paid Rose Thornton $4,000. Rose Thornton accepted the $4,000 and then told Mr. Thompson she was not going to return the money. Mr. Thompson never recovered the $4,000 that he paid for Ms. Thornton's plane ticket and never travelled to Roatan.

74. After that, Mr. Thompson asked the Michigan State Police to resume their criminal investigation.

75. Rose Thornton, nor any of the other Defendants, have ever returned any of the money they stole from Plaintiffs.

**COUNT I**
**Breach Of Contract**
**The July 2020 Promissory Note**
**(Mr. Thompson against Rose Thornton)**

76. Plaintiffs incorporate all other allegations by reference.

77. Mr. Thompson and Rose Thornton entered into a valid and binding contract in the form of the Promissory Note.

78. Mr. Thompson performed all of his obligations under the Promissory Note.

79. Rose Thornton breached the Promissory Note agreement by:

16

a.     failing to pay the balance when due;

b.     misrepresenting the nature of the use of the funds in the Promissory Note; and

c.     Other acts and omissions that may be identified during the course of discovery.

80. Rose Thornton's failure to repay the loan has caused financial damage to Mr. Thompson.

WHEREFORE, Mr. Thompson requests that this Court: (1) enter judgment in his favor and against Rose Thornton; (2) award him the damages he has incurred in this action, including consequential damages; (3) award him interest, costs, and attorney fees as provided by the Promissory Note; and (4) award him any other relief this Court deems appropriate, just and equitable.

**Count II**
**Computer Fraud and Abuse Act Violation**
**18 U.S.C. § 1030 *et seq*.**
**(Plaintiffs against Rose Thornton and Michelle Signor)**

81. Plaintiffs incorporate all other allegations by reference.

82. Plaintiffs provided Rose Thornton and Michelle Signor with computers to use as a part of their ordinary job functions.

83. Plaintiffs granted Rose Thornton and Michelle Signor access to their computers for the purpose of performing ordinary job functions, such as making data and account entries to account for the money going into and out of the Thompson Entities.

84. Plaintiffs granted Rose Thornton and Michelle Signor the right to use the internet on Plaintiffs' computers to access online banking information and online credit card information, such as account balances, for Plaintiffs bank accounts, lines of credit, and credit cards, so that they could account for the money going into and out of the Thompson Entities.

85.   Plaintiffs did not grant Rose Thornton or Michelle Signor authorization to use the internet to access Plaintiffs' account preferences or engage in online banking or credit card transactions on behalf of Plaintiffs.

86.   Rose Thornton and Michelle Signor used Plaintiffs' computers to access the internet for further access to Plaintiffs' online banking accounts (including lines of credit) at the following banks: Century Bank and Trust, Flagstar Bank, Farmers State Bank, BlueOx Credit Union, Marshall Community Credit Union, Honor Credit Union, Horizon Bank, Huntington Bank, and Sturgis Bank and Trust. Rose Thornton and Michelle Signor also used Plaintiffs' computers to access the internet for further access to Plaintiffs' online credit card accounts at the following banks: Barclays, Bank of America, and Chase Bank.

87.   Once Rose Thornton and Michelle Signor had access to Plaintiffs' online banking and credit card accounts, Rose Thornton and Michelle Signor, exceeded the authorization they had to use Plaintiffs computers by:

   a.   Accessing information about Plaintiffs' bank statement and credit card statement preferences and altering that information to require that bank statements and credit card statements be available only online and that the paper statements would no longer be generated and mailed;

   b.   Accessing information to alter Plaintiffs online passwords for the banks, credit unions and credit card companies;

   c.   Engaging in online banking transactions;

   d.   Other acts that may be identified during the course of this action.

88.    Rose Thornton and Michelle Signor's actions in exceeding their authorized access were a knowing part of an effort to defraud Plaintiffs and cover up that fraud. Specifically, Rose Thornton and Michelle Signor exceeded their authorized access for the purpose of engaging in fraudulent bank transactions to steal money from Plaintiffs and use that money for their own personal benefit. Rose Thornton and Michelle Signor's changing of account statement preferences and online passwords specifically helped them cover-up their fraudulent activity by preventing Plaintiffs from seeing online banking transactions that Rose Thornton and Michelle Signor engaged in, without permission from Plaintiffs, in which Rose Thornton and Michelle Signor took Plaintiffs' money for their own personal use.

89.    Rose Thornton and Michelle Signor obtained more than $5,000.00 in any one-year period (in each of 2021, 2022, and 2023) through their unauthorized online banking transactions and the scheme they ran to cover-up those unauthorized online banking transactions.

90.    Because of the cover-up, Plaintiffs did not become aware tht Rose Thornton and Michelle Signor had exceeded the authorizations Plaintiffs gave them until April 2023.

WHEREFORE, Plaintiffs request that this Court: (1) enter judgment in their favor and against Rose Thornton and Michelle Signor; (2) award them the damages they have incurred in this action as a result of Rose Thornton's and Michelle Signor's exceeding the authorization they had to use Plaintiffs computers; (3) award Plaintiffs preliminary or permanent injunctive relief as may be just and equitable or allowable under the Computer Fraud and Abuse Act 18 U.S.C. §1030, *et seq.*; (4) award Plaintiffs interest, costs, and attorney fees as

19

provided by the Computer Fraud and Abuse Act 18 U.S.C. §1030, *et seq*; and (5) award Plaintiffs any other relief this Court deems appropriate, just and equitable.

## Count III
## Conversion
### (Plaintiffs Against Rose Thornton and Michelle Signor)

91.    Plaintiffs incorporate all other allegations by reference.

92.    Rose Thornton and Michelle Signor wrongfully exercised dominion and control over the money in Plaintiffs' bank accounts by engaging in banking transactions that were not authorized by Plaintiffs and were inconsistent with Plaintiffs' rights in the bank accounts, including, but not limited to:

    a.    Writing checks to:

        i.    themselves;

        ii.    their family, friends, and acquaintances, (including but not limited to, the Defendants);

        iii.    "cash"; or

        iv.    their creditors

        from Plaintiffs' bank accounts and using a signature stamp to sign the check using Mr. Thompson's signature, or forging Mr. Thompson's signature to the checks;

    b.    Making electronic withdrawals of money using a computer to access the internet to make and direct the transfers;

    c.    Forging Mr. Thompson's signature for cash withdrawals from banks and credit unions at which Plaintiffs had accounts;

    d.      Transferring money through online apps such as Zelle for their own personal benefit;

    e.      Having Plaintiffs' creditors pay money owed to Plaintiffs to Rose Thornton and/or Michelle Signor instead; and

    f.      Other means that may be identified during this action;

93.    Rose Thornton and Michelle Signor wrongfully exerted dominion and control over Plaintiffs' credit cards by using those credit cards to make purchases that were not authorized by Plaintiffs. Rose Thornton and Michelle Signor then used money they stole from Plaintiffs bank accounts to "pay" for these unauthorized purchases. The unauthorized purchases were for goods and services used for the benefit of Rose Thornton and Michelle Signor and not for Plaintiffs' benefit.

94.    Rose Thornton and Michelle Signor wrongfully exercised dominion and control over Plaintiffs' credit cards by using those credit cards to make cash advances at casinos and other ATM locations that were not authorized by Plaintiffs. Rose Thornton and Michelle Signor then used money they stole from Plaintiffs' bank accounts to "pay" for these unauthorized cash advances. The unauthorized cash advances were for the benefit of Rose Thornton and Michelle Signor and not for Plaintiffs' benefit.

95.    Rose Thornton and Michelle Signor wrongfully exercised dominion and control over Plaintiffs' lines of credit by using those lines of credit to make cash advances that were not authorized by Plaintiffs. Rose Thornton and Michelle Signor then used money they stole from Plaintiffs' bank accounts to "pay" for some of these unauthorized advances. But there remains a balance on some of the lines of credit because the amount "borrowed" from the bank has not been paid back. The unauthorized

advances were for goods and services used for the benefit of Rose Thornton and Michelle Signor and not for Plaintiffs' benefit.

96.    Rose Thornton and Michelle Signor's use of Plaintiffs' money denied Plaintiffs the right to use their own money.

97.    Plaintiffs did not agree to loan this money to Rose Thornton or Michelle Signor. The money converted by Rose Thornton and Michelle Signor is separate and independent from the money Mr. Thompson loaned to Rose Thornton in July 2020 that is evidenced by the Promissory Note.

98.    Because the money Rose Thornton and Michelle Signor converted from Plaintiffs was taken without Plaintiffs permission or authorization, Rose Thornton and Michelle Signor are obligated to return the money to Plaintiffs.

99.    Rose Thornton and Michelle Signor converted Plaintiffs' money to their own use.

WHEREFORE, Plaintiffs request that this Court: (1) enter judgment in their favor and against Rose Thornton and Michelle Signor; (2) award Plaintiffs the damages they have incurred in this action as a result of Rose Thornton's and Michelle Signor's conversion; (3) award any and all relief prescribed by Mich. Comp. Laws § 600.2919a, including, but not limited to, treble damages, exemplary damages, interest, costs, and attorney fees; and (4) award Plaintiffs any other relief this Court deems appropriate, just, and equitable.

**Count IV**
**Embezzlement**
**(Plaintiffs Against Rose Thornton and Michelle Signor)**

100.    Plaintiffs incorporate all other allegations by reference.

101.    Rose Thornton and Michelle Signor embezzled money from Plaintiffs by:

a.    Making unauthorized withdrawals from Plaintiffs' bank accounts by:

i.      Writing checks to themselves; writing checks to their friends, family, and acquaintances (including Defendants) and signing them using Mr. Thompson's signature stamp or forging Mr. Thompson's signature;

ii.     Writing checks to "cash" and using Mr. Thompson's signature stamp or forging Mr. Thompson's signature and then cashing the checks;

iii.    Making electronic withdrawals of money using a computer to access the internet to make and direct the transfers;

iv.     Forging Mr. Thompson's signature, or using Mr. Thompson's signature stamp without permission, for cash withdrawals from banks and credit unions at which Plaintiffs had accounts;

v.      Transferring money through online apps, such as Zelle, for their own personal benefit; and

vi.     Other means that may be identified during this action;

b.      Making unauthorized purchases and cash advances on Plaintiffs' credit cards to purchase goods and services and take and use cash for their own benefit and not for the Plaintiffs' benefit.

c.      Making unauthorized advances from Plaintiffs lines of credit, which they then used to purchase goods and services for their own benefit and not the Plaintiffs' benefit. And

d.      Other acts that may be identified in the course of this action.

102.    The money Rose Thornton and Michelle Signor embezzled belonged to Plaintiffs because it was in bank accounts titled to Plaintiffs' respective names.

103.   Rose Thornton and Michelle Signor occupied positions of trust with Plaintiffs. Both Rose Thornton and Michelle Signor were employees of the Thompson Entities and by virtue of their jobs had access to Plaintiffs':

a.       bank accounts;

b.       credit cards;

c.       lines of credit

d.       sensitive financial information; and

e.       computers.

104.   The only reason Rose Thornton and Michelle Signor had access to Plaintiffs' money was because of the trust Plaintiff placed in them as agents or employees of the Thompson Entities.

105.   Rose Thornton and Michelle Signor dishonestly used Plaintiffs money for their own benefit and covered up their embezzlement by secreting away the money and hiding the account statements showing the transactions (including by switching from paper statements to online only statements, changing the passwords for the online accounts, intercepting bank statements and credit card statements that did come in the mail, and other communications from banks, credit unions, or credit card companies.).

106.   Rose Thornton's and Michelle Signor's actions in taking Plaintiffs' money and using it for their benefit, and not Plaintiffs' benefit, was done without Plaintiffs' consent.

107.   At the time Rose Thornton and Michelle Signor took Plaintiffs' money without Plaintiffs' consent, they did so with the intent to defraud Plaintiffs, use the money for their own benefit, and harm Plaintiffs.

WHEREFORE, Plaintiffs request that this Court: (1) enter judgment in their favor and against Rose Thornton and Michelle Signor; (2) award Plaintiffs the damages they have incurred in this action as a result of Rose Thornton's and Michelle Signor's embezzlement; (3) any and all relief prescribed by Mich. Comp. Laws § 600.2919a, including but not limited to, treble damages, exemplary damages, interest, costs, and attorney fees; and (4) award Plaintiffs any other relief this Court deems appropriate, just, and equitable.

**Count V**
**Receiving, Possessing, Concealing, or Aiding Conversion or Embezzlement**
**(Plaintiffs Against All Defendants)**

108.   Plaintiffs incorporate all other allegations by reference.

109.   Rose Thornton and Michelle Signor converted and/or embezzled money belonging to Plaintiffs as otherwise described in this Complaint.

110.   All Defendants knowingly received, possessed, concealed or aided in the conversion and/or embezzlement by:

a.   Receiving cash deposits into bank accounts they own where the source of the cash deposits was money converted or embezzled from Plaintiffs;

b.   Accepting and cashing checks written, without authorization, by Rose Thornton and/or Michelle Signor and depositing those checks in to accounts they owned, all the while knowing that they did not have any reason to receive any payment from Plaintiffs;

c.   Titling real and personal property in their own names that was purchased with money converted or embezzled from Plaintiffs;

d.   Using money stolen from  Plaintiffs to pay their creditors;

e.      Using Plaintiffs' credit cards to purchase goods and services that they consumed;

f.      Using Plaintiffs' credit cards to make cash advances from ATMs (including ATMs at casinos), then spending the money (including at the casinos) knowing they were not for the benefit of Plaintiffs; and

g.      Other acts that may be identified in the course of this action.

WHEREFORE, Plaintiffs request that this Court: (1) enter judgment in their favor and against Defendants, jointly and severally; (2) award Plaintiffs the damages they have incurred in this action as a result of Defendants' knowingly receiving, possessing, concealing or aiding in the conversion and/or embezzlement described in this Complaint; (3) all relief prescribed by Mich. Comp. Laws § 600.2919a, including but not limited to, treble damages, exemplary damages, interest, costs, and attorney fees; and (4) award Plaintiffs any other relief this Court deems appropriate, just, and equitable.

**Count VI**
**Fraudulent Misrepresentation**
**(Plaintiffs Against Rose Thornton and Michelle Signor)**

111.    Plaintiffs incorporate all other allegations by reference.

112.    On numerous occasions between June 2020 and April 2023, Mr. Thompson directly asked, in face-to-face conversations in Mr. Thompson's office in Coldwater, Michigan, Rose Thornton and/or Michelle Signor about the financial status of the Thompson Entities and if there were any unusual expenses in those entities.

113.    Each time Mr. Thompson asked these questions, Rose Thornton and/or Michelle Signor responded that there was nothing unusual and that the financial affairs of the Thompson Entities were in order.

114.   Rose Thornton and Michelle Signor's statements in response to Mr. Thompson's questions were false when they were made.

115.   In particular, the Thompson Entities were experiencing unusual "expenses" because Rose Thornton and Michelle Signor were stealing money from the Thompson Entities.

116.   Rose Thornton and Michelle Signor knew their statements in response to Mr. Thompson's questions were false when they were made.

117.   Rose Thornton and Michelle Signor intended that Plaintiffs would rely on the false statements and not inquire any further about the financial status of the Thompson Entities, so that their efforts to steal money from the Thompson Entities would remain undetected.

118.   Plaintiffs did, in fact, rely on Rose Thornton and Michelle Signor's statements and did not inquire further about whether the companies were experiencing any unusual expenditures or were otherwise in poor financial condition.

119.   Because Plaintiffs retained Rose Thornton and Michelle Signor to work on the financial affairs of the Thompson Entities as bookkeeper and accountant, respectively; and gave Rose Thornton and Michelle Signor access to the books and records of the Thompson Entities, Plaintiffs' reliance on Rose Thornton and Michelle Signor's responses to Plaintiffs' questions was reasonable.

120.   Plaintiffs reliance on Rose Thornton and Michelle Signor's misrepresentations caused financial damage to Plaintiffs.

WHEREFORE, Plaintiffs request that this Court: (1) enter judgment in their favor and against Rose Thornton and Michelle Signor, jointly and severally; (2) award Plaintiffs the damages they have incurred in this action as a result of relying on Rose Thornton and

Michelle Signor's misrepresentations; (3) award Plaintiffs exemplary damages, interest, costs, and attorney fees as allowable by law, statute, regulation, or court rule; and (4) award any other relief that this Court deems appropriate, just, and equitable.

**Count VII**
**Negligent Misrepresentation**
**(Plaintiffs Against Rose Thornton and Michelle Signor)**

121.    Plaintiffs incorporate all other allegations by reference.

122.    On numerous occasions between June 2020 and April 2023, Mr. Thompson directly asked, in face-to-face conversations in Mr. Thompson's office in Coldwater, Michigan, Rose Thornton and/or Michelle Signor about the financial status of the Thompson Entities and if there were any unusual expenses in those entities.

123.    Each time Mr. Thompson asked these questions, Rose Thornton and/or Michelle Signor responded that there was nothing unusual and that the financial affairs of the Thompson Entities were in order.

124.    Plaintiffs relied on these representation to their detriment by not inquiring further into the financial status of the Thompson Entities and if there were any unusual expenses in those entities. If Plaintiffs had inquired further, they would have seen that Rose Thornton and Michelle Signor were stealing money from Plaintiffs.

125.    Plaintiffs' reliance was justifiable because Plaintiffs retained Rose Thornton and Michelle Signor to work on the financial affairs of the Thompson Entities as bookkeeper and accountant, respectively; and gave Rose Thornton and Michelle Signor access to the books and records of the Thompson Entities.

126.    Rose Thornton and Michelle Signor's responses to Mr. Thompson's questions were prepared without reasonable care. Had Rose Thornton or Michelle Signor used

reasonable care, they would have disclosed to Mr. Thompson that the Thompson Entities were experiencing unusual "expenses" because Rose Thornton and Michelle Signor were stealing money from the Thompson Entities.

127.   As employees or agents of Plaintiffs entrusted with bookkeeping and accounting duties, Rose Thornton and Michelle Signor owed Plaintiffs a duty of care to respond truthfully to Mr. Thompson's questions.

128.   Rose Thornton and Michelle Signor's negligent misrepresentations directly and proximately damaged Plaintiffs and caused them to lose millions of dollars.

WHEREFORE, Plaintiffs request that this Court: (1) enter judgment in their favor and against Rose Thornton and Michelle Signor; (2) award Plaintiffs the damages they have incurred in this action as a result of relying on Rose Thornton and Michelle Signor's negligent misrepresentations; (3) award Plaintiffs exemplary damages, interest, costs, and attorney fees as allowable by law, statute, regulation, or court rule; and (4) award any other relief that this Court deems appropriate, just, and equitable.

### Count VIII
### Silent Fraud
### (Plaintiffs Against Rose Thornton and Michelle Signor)

129.   Plaintiffs incorporate all other allegations by reference.

130.   Plaintiffs hired Rose Thornton and Michelle Signor to act as office manager and accountant, respectively, for the Thompson Entities. Plaintiffs later gave Rose Thornton bookkeeping duties for the Plaintiffs.

131.   Plaintiffs entrusted Rose Thornton and Michelle Signor with access to their bank accounts, credit cards, lines of credit and financial information. Consequently, Rose

Thornton and Michelle Signor owed Plaintiffs a legal duty to act honestly with Plaintiffs.

132.   Rose Thornton and Michelle Signor abused the trust Plaintiffs placed in them by using the access they had to steal money from Plaintiffs.

133.   Rose Thornton and Michelle Signor knew that they were stealing money from Plaintiffs but suppressed the truth about their theft in an effort to prevent Plaintiffs from learning about their theft.

134.   Rose Thornton and Michelle Signor's coverup was a violation of the legal duties they owed Plaintiffs that directly damaged Plaintiffs.

WHEREFORE, Plaintiffs request that this Court: (1) enter judgment in their favor and against Rose Thornton and Michelle Signor; (2) award Plaintiffs the damages they have incurred in this action as a result of Rose Thornton and Michelle Signor's suppression of the truth; (3) award Plaintiffs exemplary damages, interest, costs, and attorney fees as allowable by law, statute, regulation, or court rule; and (4) award any other relief that this Court deems appropriate, just, and equitable.

**Count IX**
**Breach Of Fiduciary Duty**
**(Plaintiffs Against Rose Thornton and Michelle Signor)**

135.   Plaintiffs incorporate all other allegations by reference.

136.   Plaintiffs reposed faith, trust, and confidence in Rose Thornton and Michelle Signor because Rose Thornton and Michelle Signor were hired as agents of the Thompson Entities entrusted to perform bookkeeping and accounting work. Consequently, Plaintiffs gave Rose Thornton and Michelle Signor access to Plaintiffs' bank accounts, credit cards, lines of credit, and other financial information.

137. Plaintiffs expected that Rose Thornton and Michelle Signor would only use the access they had for Plaintiffs' benefit, consistent with the services they were hired to perform.

138. Rose Thornton and Michelle Signor owed Plaintiff a fiduciary duty to deal honestly with Plaintiffs' bank accounts, credit cards, lines of credit, and financial information.

139. Rose Thornton and Michelle Signor breached their fiduciary duties owed to Plaintiffs by using the access they had to Plaintiffs' bank accounts, credit cards, lines of credit and financial information to steal millions of dollars from Plaintiffs.

140. Rose Thornton and Michelle Signor's acts and omissions were the proximate and direct cause of Plaintiffs' damages.

WHEREFORE, Plaintiffs request that this Court: (1) enter judgment in favor of Plaintiffs against Rose Thornton and Michelle Signor; (2) award Plaintiffs all of their damages including exemplary damages, interest, costs, and attorney fees as allowable by law, statute, regulation, or court rule; and (3) award any other relief that this Court deems appropriate, just, and equitable.

**Count X**
**Extortion**
**(Mr. Thompson Against Rose Thornton)**

141. Plaintiffs incorporate the allegations in the preceding paragraphs by reference.

142. In May 2023, Rose Thornton maliciously threatened that she would only return Mr. Thompson's money if he agreed to withdraw any complaint he made to the Michigan State Police about her theft.

143. Rose Thornton told Mr. Thompson that she would return the stolen money to him in Roatan, Honduras on July 28, 2023.

144.   Mr. Thompson feared that this would be the only way he could recover the money, so he asked the Michigan State Police to stop the investigation. He purchased a plane ticket to Roatan to pick up the money.

145.   Rose Thornton never delivered the money, as promised, in Roatan.

146.   Rose Thornton made the threat with the intent to stop the criminal investigation into her theft.

147.   Rose Thornton's acts were unlawful and malicious as a matter of law, because threatening a witness, or offering a witness something of value, not to present information at a future proceeding is a felony in Michigan. *See* Mich. Comp. Laws § 750.122.

148.   As a consequence of Rose Thornton's actions, Mr. Thompson has suffered damages.

WHEREFORE, Mr. Thompson requests that this Court: (1) enter judgment in his favor and against Rose Thornton; (2) award Mr. Thompson damages, including consequential and exemplary damages, costs, attorney fees, and interest; and (3) award Mr. Thompson any other relief that this Court deems appropriate, just, and equitable.

## Count XI
### Accounting Malpractice
### (The Thompson Entities Against Michelle Signor)

149.   Plaintiffs incorporate all other allegations by reference.

150.   The Thompson Entities retained Michelle Signor to provide professional advice and services regarding accounting.

151.   The Thompson Entities and Michelle Signor had an accountant-client relationship.

152.   Michelle Signor owed the Thompson Entities the duty to provide her services as an accountant of ordinary learning, judgment, and skill would under the same or similar

circumstances and to otherwise use reasonable skill, care, discretion, and judgment in her work for the Thompson Entities and/or providing of services, information, and advice to the Thompson Entities, including, but not limited to, professional competence, due professional care, planning and supervision, and use of sufficient relevant data.

153.   Michelle Signor breached these duties owed to the Thompson Entities and committed negligence and/or accounting malpractice by, without limitation:

a.   Failing to properly reconcile the books and records of the Thompson Entities with the bank account for those entities;

b.   Failing to properly or accurately record withdrawals from the Thompson Entities bank accounts;

c.   Failing to properly or accurately record credit card transactions on credit cards issued to the Thompson Entities;

d.   Failing to keep the Thompson Entities informed of employee defalcation;

e.   Failing to provide the Thompson Entities tax accountants with accurate information about the Thompson Entities' income and expenses; and

f.   Other acts and omissions that may be determined in the course of this action.

154.   But for Michelle Signor's breach of the duties she owed to the Thompson Entities, the Thompson Entities would have discovered Rose Thornton's theft and prevented the loss of millions of dollars.

155.   As a direct and proximate result of Michelle Signor's negligence and/or accounting malpractice, and the Thompson Entities' justifiable reliance on Michelle Signor's services, information, and advice, the Thompson Entities have suffered, and will in

the future suffer, damages, consequential damages, attorney fees and costs, and exemplary damages.

WHEREFORE, the Thompson Entities request that this Court: (1) enter judgment in favor of the Thompson Entities against Michelle Signor; (2) award the Thompson Entities all of their damages including exemplary damages, interest, costs, and attorney fees as allowable by law, statute, regulation, or court rule; and (3) award any other relief that this Court deems appropriate, just, and equitable.

**Count XII**
**Racketeer Influenced and Corrupt Organizations Act Violations – 18 U.S.C. § 1962**
**(Plaintiffs Against All Defendants)**

156. Plaintiffs incorporate all other allegations by reference.

157. Rose Thorton, Michelle Signor, Nicholas Thornton, and Robert Signor operated with a common purpose and as an association in fact, thus constituting an enterprise as expressly defined by 18 U.S.C. § 1961(4).

158. Each of the Defendants conducted or participated in, directly or indirectly, the enterprise's affairs.

159. By using the internet to make unauthorized transfers of money out of Plaintiffs' bank accounts, writing unauthorized checks from Plaintiffs' bank accounts, forging Mr. Thompson's signature to unauthorized checks from Plaintiffs' bank accounts, making unauthorized advances on Plaintiffs' lines of credit over the internet; Rose Thornton and Michelle Signor engaged in numerous acts of financial institution fraud in violation of 18 U.S.C. § 1344.

160. Nicholas Thornton and Robert Signor aided and abetted the commission of the acts described in the preceding paragraph by associating with and participating in the

venture, showing the intent that it succeed, and engaging in affirmative conduct contributing to its success.

161.   Each of these numerous acts of financial institution fraud constitutes racketeering activity as expressly defined by 18 U.S.C. § 1961(1)(B).

162.   Together these numerous acts of financial institution fraud constitute a pattern of racketeering activity as expressly defined by 18 U.S.C. § 1961(5).

163.   The activities of the enterprise conducted by Defendants affected interstate commerce because, *inter alia*, one of the financial institutions at which Rose Thornton and Michelle Signor made fraudulent transactions was Farmers State Bank, which is an Indiana bank, and the transactions were initiated by Rose Thornton and Michelle Signor in Michigan.

164.   Through the foregoing racketeering activity, millions of dollars were transferred out of Plaintiffs' bank accounts - without Plaintiffs' authorization or permission - and used for Defendants' benefit. Consequently, Plaintiffs have suffered damage to their business and property as a result of Defendants' RICO violations.

165.   Defendants' actions were a direct and proximate cause of the injury to Plaintiffs.

WHEREFORE, Plaintiffs request that this Court: (1) enter judgment in their favor and against Defendants, jointly and severally; (2) award Plaintiffs the damages they have incurred in this action as a result of Defendants' actions; (3) award Plaintiffs treble damages under 18 U.S.C. § 1964; (4) award Plaintiffs consequential damages, exemplary damages, interest, costs, and attorney fees as may be allowed under statute, law, court rule, or in equity; and (5) award Plaintiffs any other relief this Court deems appropriate, just, and equitable.

**Count XIII**
**Unjust Enrichment**
**(Plaintiffs Against All Defendants)**

166.    Plaintiffs incorporate all other allegations by reference.

167.    Defendants obtained benefits from Plaintiffs in the form of millions of dollars of money that they took from Plaintiffs and used for their own personal benefit.

168.    Defendants did not confer a like benefit on Plaintiffs.

169.    It would be inequitable for Defendants to retain this benefit.

WHEREFORE, Plaintiffs request that this Court: (1) enter judgment in their favor and against Defendants, jointly and severally; (2) award Plaintiffs the damages they have incurred in this action as a result of Defendants' unauthorized use of Plaintiffs' money; (3) all relief that is necessary, in equity, to make Plaintiffs whole, including but not limited to damages, consequential damages, exemplary damages, interest, costs, and attorney fees; and (4) award Plaintiffs any other relief this Court deems appropriate, just and equitable.

**Count XIV**
**Civil Conspiracy**
**(Plaintiffs Against All Defendants)**

170.    Plaintiffs incorporate all other allegations by reference.

171.    Rose Thornton, Michelle Signor, Nicholas Thornton, and Robert Signor acted in concert to defraud Plaintiffs.

172.    Rose Thornton and Michelle Signor, with Nicholas Thornton and Robert Signor's agreement:

a.      Took the money they stole from Plaintiffs and deposited it into joint accounts that Rose Thornton had with Nicholas Thornton and that Michelle Signor had with Robert Signor;

b.      Used Plaintiffs' credit cards to purchase goods and services for Defendants' consumption and benefit;

c.      Used Plaintiffs' credit cards to make cash advances (including cash advances at casinos) that Defendants used for their own benefit;

d.      Wrote checks from Plaintiffs to Nicholas Thornton and/or Robert Signor that were not for Plaintiffs' benefit;

e.      Used Plaintiffs' money to pay their personal creditors;

f.      Titled real and personal property in the name of Rose Thornton and Nicholas Thornton , jointly, Nicholas Thornton, individually, Michelle Signor and Robert Signor, jointly, and/or Robert Signor, individually, with funds unlawfully obtained from Plaintiffs; and

g.      Engaged in other acts that may be identified during the course of discovery.

173.    Rose Thornton, Michelle Signor, Nicholas Thornton, and Robert Signor acted in concert to conceal their use of Plaintiffs money.

WHEREFORE, Plaintiffs request that this Court: (1) enter judgment in favor of Plaintiffs against Rose Thornton, Michelle Signor, Nicholas Thornton, and Robert Signor, jointly and severally; (2) award Plaintiffs all of their damages; (3) award Plaintiffs exemplary damages (including attorney fees), interest, and costs as allowed by law, court rule, statute, or in equity; and (4) award any other relief that this Court deems appropriate, just, and equitable.

Respectfully Submitted:

**ALTIOR LAW, P.C.**

/s/ Stephen T. McKenney
Kenneth F. Neuman (P39429)
Stephen T. McKenney (P65673)
Attorneys for Plaintiffs
401 S. Old Woodward, Suite 460
Birmingham, MI 48009
(248) 594-5252
kneuman@altiorlaw.com
smckenney@altiorlaw.com

Dated: February 8, 2024

## **PLAINTIFFS' JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully Submitted:

**ALTIOR LAW, P.C.**

/s/ Stephen T. McKenney
Kenneth F. Neuman (P39429)
Stephen T. McKenney (P65673)
Attorneys for Plaintiffs
401 S. Old Woodward, Suite 460
Birmingham, MI 48009
(248) 594-5252
kneuman@altiorlaw.com
smckenney@altiorlaw.com

Dated: February 8, 2024

# EXHIBIT 1

# Promissory Note

07/30/20

THIS IS A BINDING PROISSORRY NOTE BETWEEN THE PARTIES MICHAEL THOMPSON AND ROSE
THORNTON WHEREAS THE PARTIES ARE ENTERING INTO AN AGREEMENT TO LEND ROSE THORNTON
THE FOLLOWING SUMS OF MONEY. THE TERMS OF THIS AGREEMENT ARE AGREED TO BE NON
DISCHARGABLE BY ANY COURT ACTION OR BY ANY BANKRUPCY PROCEEDINGS. IF THE MONIES OWING
ARE NOT PAID BY THE DESIGNATED DATES THE INTEREST RATE SHALL BE RETROACTIVE AT 8% PER
ANNUN TO THE DATE OF THE SIGNING OF THIS DOCUMENT.

THE FOLLOWING MONIES HAVE BEEN DISBURSED TO ROSE THORNTON AS OF 07/30/20

$160,000 FOR THE PURCHASE OF A 40 ACRE TRACT LOCATED ON CLARENDON ROAD QUINCY MICHIGAN
TO BE PAID NO LATER THAN NOVEMBER 1 2020

$50,000 FOR THE PAYMENT OF MISC BILLS INCLUDING STUDENT LOANS THAT WERE TO BE  PAID OFF

$2500 FOR THE PURCHASE OF A LAWN MOWER

$4500 TAKEN FROM THE BANK OF AMERICA ACCOUNT

$7000 USED FOR THE ESCROW DEPOSIT FOR THE PURCHASE OF THE AUCTION HOUSE LOCATED ON
CLARENDON RD QUINCY *Pd Mike will Assume*

THE APPRAISAL REPORT AND FLOOD CERTIFICATION WILL BE PAID BY MIKE THOMPSON $515

THE TOTAL OF $64,000 SHALL BE DUE AND PAYABLE WITHIN 60 CALENDER DAYS FROM THE SIGNING OF
THIS DOCUMENT UNDER THE SAME AGREEMENT AND TERMS AS ABOVE.

ADDITIONALLY $7200 HAS BEEN BORROWED WHICH IT IS AGREED TO REPAID WITH NO INTEREST BY
THE CLOSE OF BUSINESS 07/30/20

THESE TERMS AND CONDITIONS ARE NON DISCHARGEABLE BY BANKUPCY OR HARDSHIP OF ANY KIND.
FURTHER THAT ANY ATTORNEY'S OR COURT COSTS WILL BE BORN BY THE BORROWER ROSE THORNTON

AGREED TO THIS 30TH DAY OF JULY 2020

MICHAEL L. THOMPSON _____

ROSE THORTON _____

Total for all monies borrowed as of 9/15/20 by Rose Thornton

*$160,000 for the purchase of Clarendon Road property*

$6500 plus $1800 that was dispursed from Sept1 thru sept 15th

$64,200 which was borrowed and agreed with the 7/30 note

$15,334.76 to pay off credit card bill for Rose

Total to date owing $277,834.76